Argued and submitted March 28, affirmed May 6, 1974

# SOUTHWEST OREGON DAIRY HERD IMPROVE-MENT ASSOCIATION, *Petitioner, v.* MORGAN, *Respondent.*

### 521 P2d 1308

*Maurice V. Engelgau,* Coquille, argued the cause and filed the brief for petitioner.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

Petitioner appeals from respondent's determination that it is a nonexempt employer under Oregon Revised Statutes, ch 657, and thus is liable to contribute to the Unemployment Insurance Fund as otherwise provided by statute.

Petitioner first contends that respondent erred in concluding that it was not a "cooperative organization" and thus exempt under ORS 657.045 (2) (d).[1]

Assuming, without deciding, petitioner is correct, its argument is without merit because petitioner's

---

[1] ORS 657.045 (2) (d) provides:

"(2) 'Agricultural labor' includes all services performed:
"* * * * *

"(d) In the employ of the operator or group of operators of a farm or farms (or a cooperative organization of which such operator or operators are members) in handling, planting, drying, packing, packaging, processing, freezing, grading, storing or delivering to storage or to market or to a carrier for transportation to market, in its unmanufactured state, any agricultural or horticultural commodity, but only if such operator or group of operators produced more than one-half of the commodity, as measured by volume, weight or other customary means, with respect to which such service is performed. This paragraph does not apply to service performed in connection with commercial canning, commercial freezing, brining of cherries, contract or custom processing of fruits or vegetables performed for the grower, or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption."

services offered to the individual dairy owners are not among those listed in that section.

Petitioner next contends that it is exempt under ORS 657.045 (1) and (2) (a). The statute provides:

"(1) 'Employment' does not include agricultural labor.

"(2) 'Agricultural labor' includes all services performed:

"(a) On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training and management of livestock, bees, poultry and fur-bearing animals and wildlife.

"* * * * *"

Petitioner itself neither owns nor operates a farm.

The only service performed by it on the farm of an individual farmer is the periodic, unannounced visit by a supervisor of petitioner to the dairy farm of an association member to check by appropriate testing the cows of the farmer for the quantity and quality of their production. The record is silent as to how frequently such a visit is made to any one member's farm. The evidence shows only that about 75 per cent of the supervisor's time is spent in such visits to the farms of all the members of the association, whose 94 herds are apparently involved in the petitioner's program. Otherwise, no employe of the petitioner performs any portion of his work on the farm of any of the association's members.

Testing of the milk samples obtained by the supervisors in their visits to the various farms of petitioner's members is normally done by petitioner's

laboratory technician who does all his work in petitioner's laboratory, which is located, not on any member's farm, but in its office at the Coos County Courthouse. Its records of testing and related reports were prepared there. Its books were maintained by its bookkeeper who kept them and performed her work at her home. She worked only on a part-time basis and independently of her regular employment.

The history of the Oregon Unemployment Compensation Law, particularly with regard to the meaning of the term "agricultural labor," is discussed in *Roberts v. Unemployment Comp. Com.*, 215 Or 100, 332 P2d 1067 (1958). There the court pointed out that in adopting ORS 657.045 (2) (d), the Oregon legislature clearly intended to adopt the federal definition of "agricultural labor."

In *Lucas County Farm Bureau Cooperative Ass'n. v. N.L.R.B.*, 289 F2d 844, 845 (6th Cir 1961), the court considered the term "agricultural labor," found in § 2 (3) of the National Labor Relations Act, and said:

"The Act is not applicable to 'any individual employed as an agricultural laborer.' Sec. 2 (3) of the Act, Sec. 152 (3), Title 29 U.S.C.A.: However, the employees herein involved worked for the petitioner corporation, not for its member farms. The petitioner was not engaged in farming and none of its employees were engaged in farming or performed any work on a farm. Petitioner's employees were not exempt as agricultural laborers. [Citations omitted.]"

■ We find that reasoning persuasive in construing the identical phrase as used in ORS 657.045. We do not think that the occasional day's testing work conducted on the farm of an individual member of the petitioner

warrants a different conclusion. The 75 per cent of his time in the aggregate is spent on member farms. In *Just-A-Mere-Farm v. Peet,* 247 Or 413, 419, 430 P2d 987 (1967), our Supreme Court concluded that work performed by plaintiff's employes consisting principally in preparation and cultivation of soil, suppression of grass, planting of seedling trees, spraying, and maintaining machinery used in such operations, was not "agricultural labor" which is expressly excluded from employment covered by the Department of Employment law, and, therefore, services performed by plaintiff's employes constituted employment under such law.

The court stated:

"* * * The types of activity described in ORS 657.045 in defining 'agricultural labor' relate directly or indirectly to operations which are commonly regarded as associated with farming in its traditional sense, i.e., where the work performed is directly or indirectly connected with the production and sale of that which the land yields annually in the form of crops or animals. This, we think, was intended in defining 'agricultural labor' in terms of 'services performed * * * in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity * * *.' The specific activities listed in the statute to help further define 'agricultural labor' or 'farm' with the possible exception of the activities specified in subsection (2) (d) all fit within the concept of farming as it is understood in common parlance. And the legislature was careful to point out that the activities specified in subsection (2) (d) not *directly* related to the production of the farm qualifies as agricultural labor 'only if such service is performed as an incident to *ordinary farming operations.*' (Emphasis added.)"

We conclude the work of petitioner's supervisor done occasionally on the farm of a member upon a fee per cow basis does not bring the business of petitioner within the concept of farming "in its traditional sense." *Just-A-Mere-Farm v. Peet,* supra.

■ Finally, petitioner contends, as to the bookkeeper who kept the books as a part-time job performed by her at her home, that the work done by her was not that of an employe under ORS 657.040.[2]

We disagree. Here the bookkeeper did no work on any farm and did not operate as an independent contractor within the provisions of that section. *Michelet v. Morgan,* 11 Or App 79, 501 P2d 984 (1972), and *Barger v. Morgan,* 13 Or App 111, 507 P2d 821, Sup

---

[2] ORS 657.040 provides:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the administrator that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2) (a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

"(A) The individual customarily has two or more effective contracts.

"(B) The individual as a normal business practice utilizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

"(C) The individual is recognized by the Department of Revenue as an employer.

"(D) The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out his contractual obligations to his clients."

Ct *review denied* (1973), set forth the conditions which must be met to warrant exclusion of such work from the Unemployment Compensation Law. The respondent correctly concluded that "petitioner did not prove that the bookkeeper was 'engaged in an independently established business.'" *Kirkpatrick v. Peet,* 247 Or 204, 428 P2d 405 (1957).

Affirmed.