Argued March 24, reversed April 21, reconsideration denied
May 28, petition for review denied June 10, 1975

APPLEMAN, *Petitioner, v.* EMPLOYMENT
DIVISION ET AL (4057), *Respondents.*

534 P2d 218

*Tom Hanlon,* Springfield, argued the cause for petitioner. With him on the brief were Babcock, Ackerman & Hanlon, Springfield, and A. C. Roll, Oceanside.

*Lester V. Smith, Jr.,* Portland, argued the cause for respondent Industrial Forestry Association. With him on the brief were Davies, Biggs, Strayer, Stoel & Boley, Portland.

No appearance for respondent Employment Division.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

THORNTON, J.

Petitioner seeks judicial review of an order of the Employment Appeals Board (Board) denying petitioner's claim for unemployment benefits.

The sole issue involved is whether claimant's employment as a field worker on employer's tree nursery is "agricultural labor" and, therefore, excluded from unemployment insurance coverage. ORS 657.045.[1]

---

[1] ORS 657.045 provides in part as follows:

"(1) 'Employment' does not include agricultural labor.
"(2) 'Agricultural labor' includes all services performed:
"(a) On a farm, in the employ of any person, in con-

The facts are not in dispute. The employer, Industrial Forestry Association, operates a 60-acre tree seedling nursery. The seeds are specially prepared by the employer and planted in raised beds of soil in its nursery. The soil is plowed, tilled, disced, harrowed and sterilized prior to planting. After planting the soil is weeded, irrigated, fertilized and sprayed. Beds which are not used to plant seedlings are used to grow cover crops. The seedlings, ranging between 12 and 18 inches, are sold to customers at the nursery site for replanting in tree farms and for reforestation. A small number of trees are also sold to individuals for decorative purposes. Douglas fir is the primary tree grown, but other evergreen trees are also grown.

Claimant's duties included: removing seedlings from the beds and distributing them to other employes; counting, sorting and placing trees in containers for shipment; assisting in the counting of trees; and wrapping roots of the seedlings in preparation for loading, and transportation. His duties did not include trans-

nection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training and management of livestock, bees, poultry and fur-bearing animals and wildlife.

"(b) In the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land of brush and other debris left by a hurricane, if the major part of such services is performed on a farm.

"* * * * * *

"(4) 'Farms,' as used in this section, includes stock, dairy, poultry, fruit, fur-bearing animal and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards.

"* * * * * *."

porting the seedlings to customers, nor unloading or replanting the seedlings.

Claimant filed an initial claim for benefits on July 1, 1974. The employment administrator denied the claim. Claimant filed a request for adjustment of the claim, but on September 5, 1974, the nonvalid claim determination was reaffirmed. Claimant then filed a request for a hearing on September 6, 1974. A hearing was conducted on September 24, 1974, before a referee. The referee set aside the determination of the administrator and found the claim to be valid. The employer thereupon requested the Board to review the referee's decision. The Board reversed the referee's decision by a vote of two to one, the majority concluding that claimant's labor for the employer was "agricultural labor" and claimant therefore did not qualify for benefits. We reverse.

The leading Oregon case in point is *Just-A-Mere Farm v. Peet,* 247 Or 413, 430 P2d 987 (1967). In that case our Supreme Court held that work performed by employes in preparing and cultivating soil, suppressing grass, planting seedling trees, spraying, maintaining machinery used in a tree-growing enterprise did not constitute "agricultural labor" and was therefore not exempt from coverage of our unemployment insurance law.

Claimant argues that *Just-A-Mere* is dispositive of the issue in his favor, whereas the employer contends that the cases are distinguishable. We further note that the Board determined that *Just-A-Mere* was not applicable to the case at bar.

Analyzing the facts in *Just-A-Mere,* the employer owned 900 acres of land, of which 330 acres were in cultivation and the remaining acreage was in forest land. Except for a family garden and orchard, all of the cultivated land was planted with forest-type trees

which were eventually expected to produce commercial timber. The major portion of the employe's services was related to the tree-growing enterprise, including the preparation and cultivation of the soil, the suppression of grass, the planting of seedling trees, spraying, and maintaining the machinery used in these operations. The operation did not include reselling the seedlings or preparing the seedlings for market. The employer conceded that ORS 657.045 was not designed to exempt large tree farms, but argued that the agriculture exemption should be applicable to it because its operations included preparing the soil for planting, cultivating the soil, spraying to control grass, and other activities generally connected with the raising of crops. The Supreme Court disagreed, and held that the type of activity carried on by the employer was not included in the general understanding of the terms "agricultural labor" and "farm" and was not entitled to the agricultural exemption of our unemployment insurance law.

The employer in the case at bar seeks to distinguish *Just-A-Mere* on several grounds. It argues that this is not a tree farm but a nursery; that in *Just-A-Mere* seedlings were planted with the intent to harvest them as marketable timber; whereas in the present case seedlings which are grown from seeds are sold to others who may eventually harvest them as marketable timber.

We are not persuaded by the employer's argument that these distinctions make for a different result. In its discussion in *Just-A-Mere,* the Supreme Court stated:

"* * * The types of activity described in ORS 657.045 in defining 'agricultural labor' relate directly or indirectly to operations which are commonly regarded as associated with farming in its traditional sense, i.e., where the work performed

is directly or indirectly connected with the production and sale of that which the land yields annually in the form of crops or animals. This, we think, was intended in defining 'agricultural labor' in terms of 'services performed * * * in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity * * *.' The specific activities listed in the statute to help further define 'agricultural labor' or 'farm' with the possible exception of the activities specified in subsection (2)(d) all fit within the concept of farming as it is understood in common parlance. And the legislature was careful to point out that the activities specified in subsection (2)(d) not *directly* related to the production of the farm qualifies as agricultural labor 'only if such service is performed as an incident to *ordinary farming operations.*' (Emphasis added.)" 247 Or at 419.

■ We cannot view the raising of commercial timber seedlings as being an operation which is commonly regarded as associated with farming in its "traditional sense," regardless of whether the seedlings are sold to others or retained and raised for timber.[2] Although, as the court explained in *Just-A-Mere,* it is not uncommon to refer to timber as a "crop," the growing of trees, or in this case seedlings, is not understood in the common parlance as an agricultural operation. *Just-A-Mere Farm v. Peet,* supra.

Also, the employer seeks to distinguish its operation from the operation in *Just-A-Mere* by characterizing its own operation as just a mere nursery and thus entitled to the "agricultural labor" exemption. ORS 657.045(4).

■ First, we note that ORS 657.045 does not spe-

---

[2] *See generally,* 76 Am Jur2d 908-913, Unemployment Compensation §§ 28, 29 (1975).

cifically define the term "nurseries" as used therein. However, following the various examples of "farms" enumerated in that section, the statute goes on to qualify the preceding examples of "farms" by specifically stating as follows:

"* * * used primarily for the raising of agricultural or horticultural commodities, and orchards." ORS 657.045(4).

Timber tree seedlings are not "agricultural or horticultural commodities" as these terms are commonly used and understood. Neither are they "orchards."

Both parties have cited several federal regulations to support their contention. The employer correctly points out that Oregon courts have given considerable weight to the definitions and regulations promulgated by the Wage and Hour Division of the United States Department of Labor. *Roberts v. Unemployment Comp. Com.*, 215 Or 100, 332 P2d 1067 (1958); *S. W. Or. Dairy Herd Ass'n v. Morgan*, 17 Or App 300, 521 P2d 1308 (1974).

With respect to the employer's contention that its operation is a general nursery, 29 CFR §§ 780.205-780.209, Nursery and Landscaping Operations (1974), are applicable.

29 CFR § 780.205 appears to include the employer's operation within the definition of the term "agriculture."

"The employees of a nursery who are engaged in the following activities are employed in 'agriculture':

"(a) Sowing seeds and otherwise propagating fruit, nut, shade, vegetable, and ornamental plants or trees (but not Christmas trees), and shrubs, vines, and flowers;

"(b) Handling such plants from propagating frames to the field;

"(c) Planting, cultivating, watering, spraying, fertilizing, pruning, bracing, and feeding the growing crop."

However, a further examination of the regulations reveals that an operation such as the one in issue is expressly classified as nonagricultural by the federal regulations.

"Operations in a forest tree nursery such as seeding new beds and growing and transplanting forest seedlings are not farming operations. The planting, tending, and cutting of Christmas trees do not constitute farming operations. If such operations on forest products are within section 3(f), they must qualify under the second part of the definition dealing with incidental practices. (See § 780.201.)" 29 CFR § 780.208 (1974).

The employer argues that 29 CFR § 780.208 (1974) is not applicable to its operation because it owns no forest land, and it is not involved in the cultivation or management of a forest. The employer further attempts to distinguish its own operation by arguing that it merely raises seedlings from seeds and then sells them to others. The gist of such an argument is an attempt to show that the employer is not involved in any forestry or lumbering operation as defined in the Code of Federal Regulations,[9] and therefore its operation should not be considered a forest tree nursery.

■ After analyzing the arguments of both parties we conclude that the employer's argument cannot be sustained, and that the order of the Board is "unlawful in substance * * *." ORS 183.480(7)(a). *Just-A-Mere Farm v. Peet*, supra; *G & A Contracting, Inc. v. Morgan*, 18 Or App 512, 525 P2d 205 (1974). The

---

[9] *See,* 29 CFR §§ 780.200-780.204, Forestry or Lumbering Operations (1974).

seedlings produced by this employer are forest trees which are sold to tree farms and for reforestation. The essential nature of the operation does not change simply because the employer does not grow the trees to maturity or plant them on its own land, or because it sells the seedlings to others. The work being performed by the employer is in effect the first step in the series of steps that is involved in the business of tree farming. Tree farming is not farming in the agricultural sense that this term was used by our legislature in the unemployment insurance law. *Just-A-Mere Farm v. Peet,* supra. *Accord: G & A Contracting, Inc. v. Morgan,* supra. The fact that this employer performs only the first step in the total operation, then sells his product to others who perform other steps, would not operate to transform the operation into agriculture rather than an integral part of the tree-farming business.

The type of nursery the employer operates is clearly classified as nonagricultural according to the federal regulations. 29 CFR § 780.208 (1974).

For the above reasons we find that claimant was not engaged in "agricultural labor."

Reversed.