Argued December 22, 1975, affirmed January 19, reconsideration denied March 10, petition for review denied March 23, 1976

## LENHARDT AIRPARK, INC., *Petitioner,*
*v.*
## EMPLOYMENT DIVISION, *Respondent.*
### (CA 5116)
544 P2d 622

*Marvin O. Bolland,* Woodburn, argued the cause for petitioner. With him on the brief were Eichsteadt, Bolland & Engle, Woodburn.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

## LANGTRY, J.

This is a petition for judicial review of an Employment Division order declaring Lenhardt Airpark, Inc., responsible for unemployment taxes for an employe of that corporation. The corporation was in the business of dusting crops with fertilizers, pesticides and fungicides from its airplanes for farmers who engaged it to perform that service. It was not itself engaged in raising any crops, and did most of its flying from its own airpark.

The employe testified that he worked five to seven months in 1974 for the corporation, that he was a "chemical mixer"—"I cleaned the planes up and did whatever they wanted around the place. I worked on his [Mr. Lenhardt, the president of the corporation] house." "* * * I maybe spent two to four hours ever on anyone's farm."[1] Crops mentioned in the testimony that were dusted included wheat, beans, potatoes and grass.

The responsibility of the employer for contributions to unemployment tax funds rests upon the interpretation to be placed upon ORS 657.045(1) and (2)(a) and (c):

"(1) 'Employment' does not include agricultural labor.

"(2) 'Agricultural labor' includes all services performed:

"(a) On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training and management of livestock, bees, poultry and fur-bearing animals and wildlife.

"* * * * *

"(c) In connection with the production or harvesting of any commodity defined as an agricultural commodity in section 15(g) of the Federal Agricultural Marketing Act, as amended, or in connection with the ginning of

---

[1] A 10-percent reduction for time that the employe spent "On a farm" spotting for the airplanes was allowed by the Employment Division.

cotton, or in connection with the operation or maintenance of ditches, canals, reservoirs or waterways not owned or operated for profit used exclusively for supplying and storing water for farming purposes.

"* * * * *."

We do not consider subsection (2)(c) to be applicable to this case, because section 15(g) of the Federal Agricultural Marketing Act, mentioned therein, deals only with gum crops produced from trees (See Federal Agricultural Marketing Act (12 USC § 1141j(g) (1970)), and no such commodity is involved in this case; and, of course, the other two occupations—ginning of cotton and irrigation work—mentioned in subsection (2)(c) are not involved here. Hence, if the employment in issue is exempt from coverage, under employer's theory, it must be by reason of ORS 657.045(1) and (2)(a), quoted supra.

The Missouri Court of Appeals case, *Mid-Continent Aerial Sprayers v. Industrial Com'n,* 420 SW2d 354 (Mo Ct App 1967), which appears to be much in point on its law and facts, has been called to our attention. The Act in question there was Mo Rev Stat Ann § 288.034(b)(a) (Vernon 1957) which provided:

"(6) The term 'employment' shall not include:

"(a) 'Agricultural labor.' This term includes all services performed:

"a. On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity * * *."

The Missouri court rejected the contention that the employer was wholly exempted simply because all of its services—the spraying of crops for many different farmers—was an activity incident to production of agricultural commodities. The court then examined the question of whether individual employe's work was done "On a farm" which it held to be the decisive question. Mechanics and maintenance workers who worked at the airfield were held to be covered; loaders of chemicals who mostly worked at airstrips on the

farms being dusted were held to be exempt from coverage. Using the test of that case we conclude the employe in question here is covered.

The employer at bar has urged upon us the decisions in *Roberts v. Unemployment Comp. Com.,* 215 Or 100, 332 P2d 1067 (1958), and *West Foods, Inc. v. Morgan, Orr,* 16 Or App 613, 519 P2d 1062, Sup Ct *review denied* (1974), where specific employments were held to be exempt. We do not consider those cases to be in point because they were concerned with other specific provisions of the law—*Roberts* with ORS 657.045(3), having to do with such employment as that in food processing plants, and *West Foods* with mushroom plants. They simply do not deal with or interpret ORS 657.045(2)(a). More in point is *S.W. Or. Dairy Herd Ass'n v. Morgan,* 17 Or App 300, 521 P2d 1308 (1974), which held a milk tester, who did most of his work off the farm, was covered by the Act. There, we said:

"We conclude the work of petitioner's supervisor done occasionally on the farm of a member upon a fee per cow basis does not bring the business of petitioner within the concept of farming 'in its traditional sense.' *Just-A-Mere-Farm v. Peet,* [247 Or 413, 419, 430 P2d 987 (1967)]." 17 Or App at 305.

Giving consideration to the purpose of the Act, the specific language of ORS 657.045(1) and (2)(a) and former decisions respecting the same question, we conclude the employe in question was not exempt from coverage under the Act in this "off the farm" employment.

Affirmed.